IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  vs.<br><br>191.07 ACRES OF LAND, more or less, situated in the Denali Borough, State of Alaska, and MILAN MARTINEK,<br><br>      Defendants. | Case No. 3:98-cv-00072 (JKS)<br><br><br>O R D E R |

### INTRODUCTION

    This case is currently on appeal to the Ninth Circuit from a decision of this Court establishing just compensation for the taking of certain mining claims. The Ninth Circuit has remanded the case for the limited purpose of determining the proper interpretation and construction of a stipulation reached by the parties at Docket No. 124. Specifically, the Circuit has remanded for the limited purpose of "determining . . . what the February 4, 2000 stipulation means, holding an evidentiary hearing if appropriate, and making findings of fact and conclusions of law." Order at Docket No. 347.

### FACTUAL AND PROCEDURAL BACKGROUND

    The Government instituted this action in straight, or traditional, condemnation on March 10, 1998, pursuant to the Declaration of Taking Act ("DTA"), 40 U.S.C. § 3111–18 (Supp. 2004) (formally codified at 40 U.S.C. § 255–258d). At the same time, the Government deposited $91,000 as its estimate of just compensation (Docket No. 5), which was distributed to Martinek on April 28, 1998 (Docket No. 26). Martinek brought a separate action in inverse condemnation claiming that the taking actually occurred earlier—on or before June 1, 1987. *See Martinek v.*

*United States*, Case No. A98-0098 CV (JKS). The cases were consolidated for trial. Docket No. 24. While this Court had earlier concluded in related litigation that the same right to jury trial allowed under Fed. R. Civ. P. 71A exists in inverse condemnation claims, the Ninth Circuit disagreed. *See KLK, Inc. v. United States Dep't of the Interior,* 35 F.3d 454 (9th Cir. 1994). Thus, since Martinek wished both a jury trial and a date of taking earlier than the commencement of this proceeding, and the government vigorously denied that a regulatory taking had occurred and argued that if a regulatory taking had occurred that there would be no right to jury trial, the Court was required to try the inverse condemnation case first (at least to the point of determining whether a regulatory taking had occurred) before proceeding to a determination of just compensation. Given the circumstances, it was unlikely that the value of the mining claims had changed between the dates debated by the parties since no one contended that there had been a dynamic market in Kantishna properties during that period. But, the date of taking would determine the date from which the government would be paying interest and, more important, the manner in which the taking occurred would determine whether there was a right to jury trial.

The Court, therefore, bifurcated the questions of inverse condemnation and just compensation, and scheduled a trial limited to a determination of whether a regulatory taking had occurred prior to the filing of the declaration of taking, which would fix the date of taking at an earlier time. Trial on these issues was set for February 8, 2000, and was expected to take ten trial days. *See* Orders at Docket Nos.104; 105; and, 118. On February 4, 2000, the parties filed the stipulation setting dates of taking earlier than the date the declaration of taking was filed. Docket No. 124. The Court understood the stipulation as a concession by the government that an inverse condemnation had occurred prior to the date set in the declaration of taking, and a compromise by the parties regarding the precise dates on which such an inverse condemnation occurred in order to compromise the date from which any judgment would bear interest. The Court thereafter operated on the assumption that the effect of the stipulation on a right to jury trial was a question of law, not a question of fact. No party ever, to this Court's knowledge, argued that the parties had expressly addressed the jury trial issue in the stipulation. Thereafter,

ORDER
F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 1998\A98-0072.020.wpd            2

the Court consistently treated this as an inverse condemnation case, not a declaration of taking case. The Court did not understand that the parties disagreed factually on this point. It was the Court's understanding that Martinek argued that because the government had filed a declaration of taking and its action was consolidated with Martinek's inverse condemnation action, the right to jury trial somehow carried over as a matter of law, not fact. This Court considered and rejected that argument as inconsistent as a matter of law, not fact, with *KLK*.[1] In the Court's view there were three, and only three, ways a condemnation action could begin; first, the government could file a declaration of taking; second, the government could file a complaint seeking a judicial condemnation; and third, the government could engage in actions which would trigger an inverse condemnation. Where the government had either filed a declaration of taking, or commenced a judicial action in condemnation, but the landowner sought to determine a date of taking earlier than the government's action, the only way the landowner could obtain the earlier date was to prove an earlier inverse condemnation and, if he did, *KLK* governed his right to jury trial as a matter of law. See the discussion of this point in the Final Decision at Docket No. 298, pp. 20–27.

The case then proceeded to a determination of fair compensation based upon the Court's assumption that it was conducting an inverse condemnation proceeding. On February 9, 2004, the Court computed a fair market value of $339,850, of which it allocated 80 percent to the Alder and Little Audrey claims, which it determined taken on January 31, 1992, and 20 percent to the Yellow Pup claims, which it determined were taken on September 8, 1995. Docket No. 299.

## DISCUSSION

The parties were placed on notice that the Court had set aside February 8, 2000 for a ten day trial to determine whether an inverse condemnation of the subject property had occurred

---

[1] This Court is, of course, bound by decisions of the Ninth Circuit whether it agrees with them or not. I do not agree with the decision in *KLK,* but am bound to follow it. I, too, have heard the quip of a famous Alaska jurist, "there is no statute so wrong that it cannot be made right by interpretation, there is no controlling decision so wrong that it cannot be distinguished away." To me, this approach is contrary to elementary jurisprudence. Statutes and case decisions, no matter how wrong, must be followed according to their terms.

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 1998\A98-0072.020.wpd

prior to March 10, 1998, in order to fix a date of taking earlier than that date. The stipulation at issue was reached on the verge of that trial. Docket No. 124. The Court assumed that the parties had chosen the earlier dates as a compromise in order to fix the date of valuation and the time from which interest would run. The Court also assumed, based upon the extensive briefing and argument over jury trial, that the parties had not separately addressed the jury trial issue in their stipulation, which was silent regarding jury trial. The Court understood that the parties agreed to disagree on the legal right to jury trial and put their respective positions to the Court for a legal determination. The government would rely on *KLK* to argue that no jury trial was available, and Martinek would rely on his legal theory that where an inverse condemnation matter is consolidated with an action by the government seeking condemnation, the jury trial right attaches to the inverse condemnation as a matter of law, not fact. The Court has resolved this legal issue. *See e.g.,* Orders at Docket Nos. 298; 299; and, 310.

It appears that the Ninth Circuit panel sees the issue differently, but precisely what it is that the panel wishes determined is unclear. Is the panel asking whether the government agreed with Martinek to file an amended declaration of taking dated nunc pro tunc on the dates chosen by the parties in their stipulation? If so, no such amended declaration of taking was ever filed. This Court is not aware of any such contention. Is the Circuit asking whether the parties, in discussing the proposed stipulation, reached an agreement as to Martinek's right to jury trial and, if so, what was the agreement? If this is the panel's concern, this Court assumes that if any party believed that such an agreement existed it would have brought the matter up long before this.

Do we treat the stipulation as a contract and interpret it under Alaska law, in which case the uncommunicated intentions of a party are irrelevant? Is there a federal common law regarding interpretations of stipulations? Does the stipulation speak for itself regarding its meaning or may we look to parol evidence? Is the agreement "integrated"? How does the parol evidence rule apply under Alaska law? The panel asks the Court to make findings of fact and conclusions of law. Let us assume that this Court is correct, that the parties only intended to have the stipulation fix the date of taking for purposes of valuation and the commencement of interest and left its legal effect to the Court. The Court has already exhaustively addressed the

ORDER                                           4

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 1998\A98-0072.020.wpd

legal significance of the stipulation if those were its terms.  What else is left to do?  What if one or both parties were mistaken in the utmost good faith regarding the legal significance of agreeing that an inverse condemnation had occurred prior to March 10, 1998, and that if both parties had known the legal effect on the right to jury trial they would have accepted the March 10, 1998, date as the date of taking and proceeded to jury trial on that basis?  Does that mean the stipulation is a nullity and that everything that subsequently occurred is disregarded?  Do we return to square one?   The Court is not aware that anyone has previously made this claim.  The Court is not aware that Martinek ever sought to rescind the stipulation and accept the March 10, 1998, date of taking in order to preserve his jury trial rights.  In short, the Court is concerned that further proceedings will muddy the waters, not clear them.[2]

At this stage, the Ninth Circuit has not expressed an opinion regarding any of this Court's earlier rulings.  The Court assumes they are still binding under the doctrine of the law of the case.  Nothing in the remand would appear to authorize this Court to revisit any of those earlier decisions and the Court is not aware of any relevant changes in the law at the Ninth Circuit or Supreme Court level.  At the moment, the Court cannot see how any factual development at a subsequent hearing regarding the stipulation would affect those legal conclusions, but is open to suggestion.

**IT IS THEREFORE ORDERED:**

The parties shall meet, confer, and inform the Court in a joint status report to be filed by counsel for the government after consultation with counsel for the landowner indicating a protocol for responding to the remand.  The joint status report shall be due on **Monday, November 13, 2006**.  The parties should indicate in the joint report what precise factual questions need to be resolved, which factual questions are in dispute, which witnesses and exhibits are required to resolve the factual disputes, and what the legal effect of resolving the

---

[2] Long ago, this case called for a modern Dickens to step forth and utilize it in a sequel to *Bleak House*.

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 1998\A98-0072.020.wpd

factual disputes would be in light of published decisions of the Ninth Circuit and of the United States Supreme Court (which should be cited in the status report).  Provided that, if the parties are either unable to identify the factual disputes or, having agreed upon the issues of fact, are unable to agree upon the legal significance of a resolution of the factual disputes, the parties shall incorporate any agreements they have been able to reach in the joint statement and then each party shall file a separate memorandum of points and authorities covering that parties' position as to all factual and legal disputes related to the remand order.  The separate memoranda shall also be due on **November 13, 2006.**  The parties should indicate whether an evidentiary hearing is necessary and, if it is, how much time should be allocated to its resolution.

  Dated at Anchorage, Alaska, this 15th day of September 2006.

                /s/ James K. Singleton, Jr.
                **JAMES K. SINGLETON, JR.**
                United States District Judge

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 1998\A98-0072.020.wpd