LAWRENCE V. ALBERT
Attorney at Law
P.O. Box 200934
Anchorage, Alaska 99520
Tel: (909) 243-2172
Email: albertl@alaska.net

ARTHUR E. NEUMAN
Law Offices
3201 New Mexico Ave., N.W., Ste. 247
Washington, D.C. 20016-2756
Tel: (212) 364-0197

Co-Counsel for Milan Martinek and
191.07 Acres of Land, More or Less

DEAN K. DUNSMORE
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
(907)271-5452
Facsimile: (907)271-5827
Email: dean.dunsmore@usdoj.gov

Attorney for United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. 3:98-cv-00072-JKS |
| ) | (CONSOLIDATED) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | JOINT STATUS REPORT TO THE |
| 191.07 Acres of Land, more or ) | COURT IN RESPONSE TO |
| less, situated in the Denali ) | NINTH CIRCUIT REMAND RE: |
| Borough, State of Alaska, and ) | STIPULATED DATES OF TAKING |
| Milan Martinek, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**INTRODUCTION**

The parties hereby file their Joint Status Report in

response to this Court's Order of September 15, 2006. The Order

responds to a limited order of remand by the Ninth Circuit Court of Appeals entered on September 1, 2006. The appellate court's Order states "we remand to the district court for the limited purpose of determining, at its earliest convenience, what the February 4, 2000, Stipulation means, holding an evidentiary hearing, if appropriate, and making findings of fact and conclusions of law."

In this consolidated proceeding, the parties depending on the respective cases appear both as plaintiffs and defendants. For convenience, they will be hereinafter referred to as the United States, and Mr. Martinek (the land owner whose property was taken).

The stipulation of February 4, 2000 (Docket 124) concerns dates of taking. The Ninth Circuit noted that the record was silent as to  the parties' intent in entering the stipulation. This Court's Order asks the parties to comment through filing of this joint status report on the "precise factual questions [that] need to be resolved." As a summary response, the parties essentially agree with the Court's analysis of the stipulation, and by implication, what should be reported back to the appellate panel.

In entering into the stipulation, the parties only agreed to establish dates of taking for valuation purposes. As such, the stipulation only established the dates of taking for each of the claims to be used in determining just compensation due to Mr. Martinek. The stipulation is silent regarding the legal consequences flowing from the dates of taking. The parties were

deliberately silent about legal consequences, because the legal issues were being separately litigated before the court

The legal issues associated with the stipulated dates of taking have been litigated by the parties and determined by this Court through several orders,[1]/ which thereafter merged into the Court's Pre-Trial Order (Docket 245), and which was confirmed in the Court's Final Decision on valuation (Docket 298). Those rulings are the subject of Mr. Martinek's appeal to the Ninth Circuit.

The parties are in agreement as to the basic facts relating to their entry of the stipulation of February 4, 2000, and those facts are set forth in Part E commencing at 16, *infra*. They, however, may differ as to their legal interpretation as to the effect of that stipulation and what is required by both the remand order of the Court of Appeals and this Court's Order of September 15, 2006.

Accordingly, the parties will summarize in Parts A, B, C, and D below their own understanding of the background, history and legal issues associated with the stipulation, recite to the record regarding prior briefing and the court's rulings on the issues, and request that the court enter findings of fact and conclusions of law consistent with this Joint Status Report.

---

[1]/     *See* Order of January 11, 2000 (Docket 194) and Order of January 25, 2000 (Docket 191), entered in the companion case *Arnold E. Howard, et al v. United States,* No F98-0006 CV.  These cases were consolidated with the Howard cases during the date of taking phase of litigation, and thereafter bifurcated.  *See also* Order of January 2, 2001 (Docket 171) and Order of September 10, 2001 (Docket 196), concerning Martinek's cases only.

**DISCUSSION**

A.    **Mr. Martinek's Contentions Re: Review of Stipulations in Court Proceedings; Role of Date of Taking in Just Compensation Proceedings.**

In asking for a statement of the parties' intentions, along with findings of fact and conclusions of law from the court, the Ninth Circuit's order of remand suggests judicial review of the stipulation. This Court's Order at 4 also poses questions on interpretation of stipulations and how to resolve disputes concerning stipulations. Given the guidance in both the Ninth Circuit's and this Court's orders on the matter, Mr. Martinek's offer the following ground rules on judicial review of stipulations generally,[2]/ and the fact/law significance of a stipulation on date of taking.[3]/

Stipulations as to pure conclusions of law are not enforceable upon a court.[4]/ Thus, parties may not contract to a

_____

[2]/    A mining claim validity stipulation was litigated in the companion case of *Howard*, and this Court had occasion to review the law of stipulations and relief from enforceability of a stipulation. *See Arnold E. Howard, et al v. United States,* No. F98-0006 CV (JKS), Docket Nos. 218-19 (motions), 223 (opposition), 226 (reply), and 228 (order).

[3]/    However, as set forth in Part E commencing at 16, *infra*, the parties are in agreement as to the purpose and intent of their stipulation. Therefore, it is the position of the United States that it is not necessary to discuss how to interpret the February 4, 2000 stipulation. If that were an issue, it is the position of the United States that this stipulation is a settlement agreement. Settlement agreements are contracts subject to to the law regarding the interpretation of and limits of federal contracts.

_____

[4]/    E.g., Sanford's Estate v. Comm'r Internal Revenue Service, 308
(continued...)

rule of decision that varies with established law or the court's function to independently ascertain the law. *See supra* Note 4. The court always retains authority to review stipulations as to pure matters of law, and a party may move to set aside such stipulation or ask the court to disregard a stipulation because it incorrectly states the law.[5]/ These principles apply to stipulated conclusions of law that proceed from fictitious facts by comparison to the record.[6]/ The rationale in this latter context is that courts only adjudicate actual controversies, hence stipulations proceeding from fictitious facts are moot and become a nullity. *See supra* Note 6.

Stipulations as to mixed matters of fact and law apply the same principles.[7]/ Stipulated facts are interpreted according to principles of contract, and hence, judicial interpretation must give effect to the intentions of the parties.[8]/ Consistent with principles of contract formation, the court should verify that a

---

[4]/    (...continued)
U.S. 39, 50-51 (1939); *Dimiowich v. Bell & Howell, Inc.,* 803 F.2d 1473, 1477 n.1 (9th Cir. 1986); *Los Angeles Shipbuilding & Drydock Corp. v. United States,* 289 F.2d 222, 231 (9th Cir. 1981).

[5]/    *See, e.g., Sanford's Estate, supra; Bell & Howell, supra.*

[6]/    *E.g., Swift & Co. v. Hocking Valley Railway Co.,* 243 U.S. 281, 289-90 (1917); *Bell & Howell, supra.*

[7]/    *E.g., Spanger v. Pasadena City Bd. of Education*, 519 F.2d 430, 434 n.4 (9th Cir. 1975); *Los Angeles Shipbuilding, supra.*

[8]/    *E.g., U.S. v. Petty,* 80 F.3d 1382, 1387 (9th Cir. 1996) (stipulation waiving right of appeal construed not to include unanticipated violations that arose subsequent to agreement).

stipulation is freely and voluntarily entered into.[9]/ Admissions as to factual matters should be honored by the court absent a subsequent dispute regarding the stipulation.[10]/ A stipulation may be set aside if a party otherwise bound by it would suffer manifest injustice and the opposing party will not be prejudiced.[11]/

The date of taking is sometimes described as a conclusion of law and sometimes as a matter of fact.[12]/ Determining a taking itself appears to be a mixed fact/law question. The Ninth Circuit has endorsed this view in *Del Monte Dunes,* wherein a takings claim styled as a Section 1983 cause of action was presented to a jury.[13]/

It is frequently stated that the existence of a taking in

---

[9]/   *See U.S. v. Technic Services, Inc.,* 314 F.3d 1031 (9th Cir. 2002).

[10]/   *See, e.g., Koch v. U.S. Dept. of Interior,* 47 F.3d 1015, 1018 (10th Cir. 1995) (affirming an undisputed stipulation "these islands lie in a non-navigable portion of the Colorado River").

[11]/   *E.g., United States v. MacGregor,* 529 F.2d 928, 931 (9th Cir. 1976) (citing 9 J. Wigmore, *Evidence* §§ 2588, 2597 (3d ed. 1940); *accord, CDN, Inv. v. Kapes,* 197 F.3d 1256, 1258 (9th Cir. 1999).

[12]/   *Cf. Eltzroth v. U.S.,* 124 F.3d 632, 635 (4th Cir. 1997) (determination of a taking involves question of law reviewed de novo); *Tlingit & Haida Indians v. U.S.,* 389 F.2d 778, 791 (Ct.Cl. 1968) (J. Nichols, dissenting: stipulation as to date of taking is a conclusion of law to which the court was not bound)*; with, e.g., Del Monte Dunes at Monterey v. City of Monterey,* 95 F.3d 1422, 1428 (9th Cir. 1996) (regulatory taking is a mixed fact/law question), *aff'd,* 526 U.S. 687 (1999); *Yuba Goldfields v. U.S.,* 723 F.2d 884, 887 (Fed. Cir. 1983) (determining existence of regulatory taking is fact intensive).

[13]/   *See Del Monte Dunes, supra.*

inverse condemnation is a fact question at least for purposes of summary judgment.[14]/ Still, principles of just compensation or takings jurisprudence are involved in decisions concerning the date of taking, and therefore, the issue becomes one of law.[15]/ The available precedent indicates that stipulations on the date of taking have been reviewed as conclusions of law.[16]/

In *Kirby,* the Supreme Court agreed with the Fifth Circuit that a stipulated date of taking in a "straight" condemnation action was not binding on the court and could be set aside.[17]/ The parties in *Kirby* had stipulated that the date of taking was the date of trial. *Kirby* upheld the stipulation for a date of valuation but rejected the stipulation for a date of appropriation. *Id.* The Court determined the appropriation date independently as a matter of law and ruled this occurs in a straight condemnation action when just compensation is actually paid.[18]/ While *Kirby* may be relevant regarding judicial review of a stipulated date of taking, that case is distinguishable because it did not involve a declaration of taking which fixes a single date of valuation and appropriation.

---

[14]/   *See, e.g., Hendler v. U.S.*, 952 F.2d 1354, 1363 (Fed.Cir. 1991) (citing cases).

[15]/   *See, e.g., United States v. Dow,* 357 U.S. 17, 20-26 (1958).

[16]/   *See Kirby Forest Industries v. U.S.,* 467 U.S. 1, 8 & nn. 10-11 (1984); *accord, Stephenson v. U.S.,* 33 Fed.Cl. 63, 65-66 & n.2 (1994).

[17]/   *See Kirby, supra* at 8 n.11.

[18]/   *Id.* at 9-13.

U.S. v. 191.07 Acres of Land
Case No. 3:98-cv-00072-JKS
Joint Status Report                -7-

**B.    Mr. Martinek's Intentions Related to Stipulation.**

According to Mr. Martinek, the parties' intentions related to the stipulation can be gleaned from pleadings, prior motion practice, and oral argument before the Court. The legal issues associated with the stipulation concern the court's jurisdiction over takings versus just compensation proceedings and the availability of jury trial. In entering the February 4, 2000, stipulation, the parties did not have any agreement as to the effect of the stipulated dates of taking. They reserved their legal arguments with respect to that effect.

Mr. Martinek's consistent position on the legal issues is that the date of filing for the DT action does not control the date of taking; but either party in a DT action may assert and have adjudicated an earlier date of taking pursuant to *Dow*; and on any such claim a jury demand may be made pursuant to Civil Rule 71A(h). *See* Dockets 32, 164, 188, 194, 245; *Howard* Docket 168 at pp. 3-8, 186). Mr. Martinek has consistently acknowledged that if the court's taking jurisdiction were determined to lie exclusively with the MPA, then the taking would sound necessarily in inverse condemnation, and he would have no right to jury trial pursuant to *KLK.  See id.*

Legal issues associated with date of taking were first raised in the United States' June 1998 Motion to Dismiss Case A98-0098 CV. (*See* Dockets 29, 32, 36). The court denied the government's motion to dismiss in August 1998 (Docket 37), finding there to be fact questions and did not reach the legal arguments framed by the parties.

The parties next visited legal issues associated with date
of taking in their December 1999 Proposed Pre Trial Order
(*Howard,* Docket 168 at pp. 3-8), copy attached as Exhibit A,
along with the final pre trial conference on date of taking held
on January 6, 2000 (Docket 119). The Joint Statement of Issues
along with the Contested Issues of Fact and Law addressed the
parties' conflicting positions on the court's jurisdiction to
consider an earlier date of taking. However, the proposed Pre
Trial Order did not address the legal issue of jury trial
associated with the parties' conflicting position on
jurisdiction.[19]/

The significance of date of taking legal issues with jury
trial appears to have been first raised with the court during the
final pre-trial conference held on January 6, 2000. The jury
trial issue apparently arose during questioning by the court as
it was trying to figure out the various permutations on its
jurisdiction. At that time, the court had four consolidated cases
calendared for trial on date of taking (F98-0006, F98-0023, A98-
0072, A98-0098). The court issued an Order on January 11, 2000,
copy attached as Exhibit B, in which it first addressed the
relationship between jury trial and the parties' conflicting
positions on jurisdiction and date of taking. (Docket 184).

Martinek moved for reconsideration of the January 11, 2000,
Order. (*Howard,* Docket 186). In response, the Court then issued a

---

[19]/  Such discussion was not necessary in the December 1999
proposed Pre Trial Order, and would have been premature in any
event, because Martinek only demanded a jury trial in the valuation
phase, and not the date of taking phase, of the proceeding.

second Order on January 25, 2000 (Docket 191), copy attached as
Exhibit C, clarifying its January 11, 2000 Order, while denying
Martinek's motion for reconsideration. Mr. Martinek views the
Court's January 25, 2000 Order as the first definitive ruling on
legal issues associated with a date of taking in this case.

Trial on date of taking was scheduled to commence on
February 7, 2000. In late January 2000, the parties' counsel met
to discuss possible settlement on a date of taking. This
discussion included the claim groups in both the *Howard* and
*Martinek* cases. To the extent that counsel for Mr. Martinek
recollects, the settlement dialogue evaluated the parties'
respective positions for proving a take on each of the claim
groups. As such, the dialogue concerned principles of regulatory
taking only and not other legal or factual issues in the cases.
The settlement dialogue resulted in the parties' stipulation on
dates of taking.

The court convened on February 7, 2000, to confirm the
parties' settlement. (Docket 125). During the conference, the
court noted that its recently entered Orders reflected "[a]
conclusion that I tentatively reached in responding to motions."
(Docket 189 at 9) The court indicated that the jury trial issue
might be appropriate for interlocutory appeal and invited a
motion on the matter. *Id.* In this regard, the court stated "to a
certain extent, I know what your respective positions are because
that was a focal point [of the recent briefing] . . . , but I am
not sure you see it that way." *Id.*

At the February 7, 2000, status conference, the court asked

for a prompt filing if interlocutory appeal on jury trial were to be pursued. Docket 189 at 10. Martinek later filed a motion for interlocutory appeal for jury trial, but not until June 2001. Docket 188. The government opposed the motion. In September 2001, The court denied Mr. Martinek's motion as untimely. Docket 196. The Order denying interlocutory appeal did not revisit the Court's earlier Orders regarding the relationship between jurisdiction, date of taking and jury trial. *See id.*

In November 2000, the government moved to dismiss the DT action on grounds this was no longer necessary due to the stipulated earlier dates of taking that sounded in inverse condemnation. Dockets 163, 170. Mr. Martinek opposed the motion on jurisdictional grounds, arguing that once the government filed the DT action and tendered a deposit of just compensation into the court, then title was transferred to the United States and the action could not be dismissed as a matter of law. Docket 164. Martinek also argued that the earlier dates of taking did not effect an appropriation by the United States both because title had not transferred and the government had made no payment of just compensation prior to March 10, 1998. *Id.*

The Court entered an Order in January 2001 denying the government's motion. Docket 171, copy attached as Exhibit D. In its January 2001 Order, the Court's revisits its analysis of *Dow* in the Order of January 25, 2000. After summarizing the *Dow* principle, the Order states: "The owner's argument, even if accepted by the government in a stipulation to pick an earlier date of taking, does not moot the declaration of taking

procedure. It is the declaration of taking, not the claim of inverse condemnation, that vested title in the United States and entitled the owner to the deposit." Docket 171 at 2.

The parties prepared a Pre Trial Order for the valuation phase of the case that the court adopted in November 21, 2002. Docket 245. The provisions of the Pre Trial Order on "Jurisdiction," "Nature of the Action," and "Legal Issues Already Decided by the Court" are consistent with the summary provided in this status report. *See id.* Although the Pre Trial Order noted the jury trial issue had already been decided along with dates of taking, the Final Decision expanded upon the legal conclusions contained in the Court's Orders of January 11 and 25, 2000. (Docket 198 at 1, 21-27).

Regarding the stipulation, the Final Decision noted this was one of fact, that it could be ignored by the court if unsound and that it elected not to require an evidentiary basis for the stipulation or explain how a regulatory taking could have occurred at different dates. (Docket 198 at 22 n.20). Furthermore, the Final Decision "recognizes the parties stipulated to dates of taking to facilitate valuation, hoping to reserve their respective positions on all other issues." *Id.* at 24.

Regarding jury trial, this court noted in its Final Decision: "[t]he matter of a jury trial is not addressed in the stipulation." Docket 198 at 24. Associated with this finding, the Final Decision also states "[t]he Court never meant to imply that Mr. Martinek expressly 'waived' his right to jury trial or that

the parties entered into the stipulation with the specific intent to shift the fact finding responsibility regarding just compensation from a jury to the Court." *Id.* Mr. Martinek agrees with these findings. Mr. Martinek contends the government has indirectly challenged these findings by arguing to the Ninth Circuit that he waived his right to jury trial by entering into the stipulation.  Martinek disagrees, however, that issue is joined before the Ninth Circuit.

### C.    Explanation for Stipulated Dates of Taking.

The Proposed Pre Trial Order of December 1999 sets forth the parties views on date of taking issues. *See* Exhibit A. According to Issue 5, Mr. Martinek contended a date of taking occurred on alternative dates commencing in April 1987 and running through September 1995, while the government contended no taking occurred prior to filing the DT action on March 10, 1998. The evidentiary basis for the parties' views is set forth in their trial briefs on date of taking (*Howard* Docket 149 at pp.10-30, 153A at pp. 54-55).

If the parties were to settle on a date of taking, the United States insisted that there be some administrative action occurring on the targeted date that could be alleged to constitute a taking. Accordingly, the dates of taking for the three claim groups were selected in context of their administrative status with the National Park Service at the time. Two different dates of taking were selected as to the three claim groups because their administrative status differed on the dates in question. The United States did not specifically agree that

the administrative actions corresponding to the selected dates were sufficient to constitute a taking.

**D.  The United States' Position On Effect of Date of Taking**

The United States' position on the legal issues associated with the date of taking has been that the date of taking for a condemnation action in which a declaration of taking is filed ("DT action") is the date of filing of the declaration of taking. In this case the DT was filed on March 10, 1998. See Dockets 29, 36, 66 at pp. 23-26, 163, 170, 193, 245; *Howard* Docket 168 at pp. 3-8. The United States recognizes that in a DT action, either party may file a demand for a jury trial pursuant to Civil Rule 71A(h).

The United States also contended that an inverse condemnation claim may not be brought in any direct condemnation action including those in which a declaration of taking is filed. Any such claim may be brought only in an action pursuant to statutes that authorize and waive the sovereign immunity for such claims; generally 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491. Claims for the taking of certain mining claims within units of the National Park System could be brought pursuant to 16 U.S.C. § 1910.

The United States did not contest that the mining claims owned by Mr. Martinek could come within the provisions of 16 U.S.C. § 1910. The United States contended, however, that as a result of his settlement of his action just for compensation for the same mining claims brought before the Court of Federal Claims pursuant to 28 U.S.C. § 1491, Mr. Martinek was precluded from

bringing an inverse condemnation suit in this court for a taking of these same claims pursuant to 16 U.S.C. 1910. This court rejected that argument. Order denying Motion to Dismiss (Docket Entry No. 71 filed on August 17, 1998).

Subsequent to the court's Order (Docket Entry No. 37), the United States did not persist in pressing its position that Mr. Martinek was foreclosed by the settlement in the Court of Federal Claims from bringing an inverse condemnation action for an alleged taking of his property prior to March 10, 1998, pursuant to the court's jurisdiction under the Mining in the Parks Act ("MPA"), 16 U.S.C. § 1910. Instead of continuing to dispute that issue in this Court or to appeal that determination, the United States in February 2000, stipulated to dates of taking that pre-dated the filing of the declaration of taking. With that stipulation, the United States believed it was effectively agreeing that inverse condemnation of Mr. Martinek's property had occurred by operation of the Mining in the Parks Act, 16 U.S.C. §§ 1901-1912.

The position of the United States was also that the decision in KLK[20]/ case constituted the controlling precedent regarding waiver of sovereign immunity under the Mining in the Parks Act, and that valuation based upon an earlier, inverse date of taking would be tried to the court.

The position of the United States has been that in agreeing to a date of taking that pre-dated the DT both parties were aware

---

[20]/    See KLK, Inc. v. U.S. Dept. of Interior, 35 F.3d 454 (9th Cir. 1994).

that such an agreement had implications for the availability of a
jury trial, and that both parties factored that into their
agreement to settle on the taking dates in the stipulation of
February 4, 2000. This Court in its order of January 25, 2000,
stated - at a time when Mr. Martinek's action for inverse
condemnation was consolidated with those of other mining
claimants in Howard v. United States - that if miners establish a
date of taking earlier than the date of taking for a direct
condemnation action, it will be viewed as a claim for an inverse
condemnation action governed by the Ninth Circuit's ruling in
KLK, and just compensation will be determined by the court, not a
jury.

**E.    Parties' Agreement With Respect to Stipulation.**

While their positions may be different with respect to the
legal issues regarding what may or may not have constituted an
inverse taking and the effects of any such taking on the rights
and respective positions of the parties, the United States and
Mr. Martinek stipulate to the following findings of fact and
conclusions of law regarding the Stipulation as to Dates of
Taking of February 4, 2000:

1.  The parties entered into the stipulation of February 4,
2000, freely and voluntarily based upon their own understanding
of the application of the law to that stipulation.

2.  The position of the United States was that none of the
mining claims at issue were taken and no just compensation was
due for a taking of those claims until the commencement of this
action in Case A98-0072 Civil in the United States District Court

for the District of Alaska and the filing of a declaration of taking therein on March 10, 1998. The United States recognized this court had jurisdiction over an earlier date of taking pursuant to the Mining in the Parks Act, 16 U.S.C. § 1910, but denied such earlier taking.

Mr. Martinek contended that these mining claims were taken prior to March 10, 1998, as a result of actions or inactions of the National Park Service. Mr. Martinek presented that contention in both his answer to the Complaint in Condemnation in Case No. A98-0072 Civil, and in his complaint filed pursuant to the Mining in the Parks Act, 16 U.S.C. § 1910, in Case No. A98-0098 Civil.

3.  The stipulation of February 4, 2000, was entered into by the parties in compromise and settlement of their differing contentions regarding the dates of the taking of the mining claims at issue in this proceeding. The purpose of that stipulation was to establish the dates to be used for determining the amount of just compensation that the United States was required to pay for the taking of all of the mining claims in this case including the calculation of the accrual of any interest due as a component of just compensation on principal sums owed to Mr. Martinek.

4.  The dates agreed upon were January 31, 1992, for the Alder and Little Audrey mining claims, and September 8, 1995, for the Yellow Pup mining claims. While these dates corresponded to the dates of actions taken by the National Park Service that arguably could have constituted a regulatory or inverse taking, there was no agreement of the parties as to the type of taking at

issue in this proceeding.

Two different dates of taking were selected (as between the Alder and Little Audrey versus Yellow Pup claims) due to their differing administrative status with the National Park Service. However, neither party contended there were multiple takings, or a temporary following by a permanent taking, for any of the claims.

5. The parties understood that legal consequences flowed from their stipulation on dates of taking including (a) legal issues pertaining to the court's jurisdiction, if any, regarding an earlier date of taking from the date of filing of the DT action in Case A98-0072 on March 10, 1998; (b) the date on which the claims were appropriated by the United States in terms of actual payment and transfer of title; and ( c) the possibility or preclusion of jury trial for any earlier date of taking from March 10, 1998, pursuant to  Fed. R. Civ. P. 71A(h).

6.   With respect to the stipulation of February 4, 2000, the parties had no agreement as to any legal conclusions flowing from their stipulation on dates of taking. Implicitly, the parties retained their right to present any legal arguments they might have regarding the effect of that stipulation, and this became manifested in the motion practice before and the various rulings of the Court. Accordingly, the parties did not intend to incorporate any conclusions of law associated with their stipulation, but instead reserved their rights to further litigate the legal consequences.

7.   Through a series of rulings, the court determined the

legal conclusions associated with the parties' stipulation on dates of taking along with the availability of a right to request trial by jury on valuation.

8. Mr. Martinek disagrees with the court's rulings regarding a condemnation court's jurisdiction over an earlier date of taking and availability of jury trial and has appealed the Final Decision to the Ninth Circuit Court of Appeals.

9. With respect to the matters noted in the Order (Docket Entry No. 348) filed September 15, 2006, at 4, the parties state that (1) there was no agreement by the parties that the United States would file an amended declaration of taking or amend the Declaration of Taking (Docket Entry No. 2) filed in Case No. A98-0072 Civil, in any way, and (2) that the parties made no agreement regarding Mr. Martinek's right to a jury trial.

10. Given the above recitation of the parties' intentions regarding the stipulation, along with the court's rulings on the legal conclusions associated with the stipulation, the parties do not believe there is any need for, and they do not request an evidentiary hearing to resolve the Ninth Circuit's remand order.

11. No party to this proceeding has sought to rescind or modify the February 4, 2000, Stipulation As to Dates of Taking.

### F.  **Additional Proceedings in this Case.**

As already stated above, the parties do not request an evidentiary hearing with respect to their intent of the February 4, 2000, Stipulation As To Dates of Taking. It is the position of the United States that this Court, through its Order of September 15, 2006, was already aware of the foregoing intent of the

parties with respect to the effect of that stipulation, and has already entered its decisions on the legal effect of that ruling. Therefore, it is the position of the United States that the sole role of this Court on the current remand is to report back on the Court of Appeals on the parties' agreement to the facts set forth in Part E above, and that no further ruling in this case on the legal effect of the February 4, 2000 stipulation is required or within the scope of the limited remand.

Mr. Martinek concurs with the United States that the court should report back to the Ninth Circuit the agreed upon facts set forth in Part E above. Mr. Martinek qualifies his concurrence to emphasize that the law of the case developed by this court governs any legal conclusions to be drawn from the stipulation on dates of taking. Although the appellate court is free to draw its own conclusions of law as to stipulations generally, Mr. Martinek requests that Ninth Circuit look to the law of this case for that purpose.

DATED this 27th day of November, 2006.


/s/ Lawrence V. Albert
LAWRENCE V. ALBERT
Attorney at Law
P.O. Box 200934
Anchorage, Alaska 99520
Telephone: (907) 243-2172
Email: albertl@alaska.net

ARTHUR E. NEUMAN
Law Offices
3201 New Mexico Ave, N.E., Ste. 247
Washington, D.C. 20016-2756
Telephone: (202) 364-0197

Attorneys for Milan Martinek and
191.07 Acres of Land, More or Less

/s/ Dean K. Dunsmore
DEAN K. DUNSMORE
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone:(907)271-5452
Facsimile: (907)271-5827
Email: dean.dunsmore@usdoj.gov

Attorney for the United States

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of November, 2006, a copy of the foregoing JOINT STATUS REPORT TO THE COURT IN RESPONSE TO NINTH CIRCUIT REMAND RE: STIPULATED DATES OF TAKING together with attached Exhibits was served by First Class Mail, postage prepaid on:

Lawrence V. Albert
Arthur E. Neuman

/s/ Dean K. Dunsmore
DEAN K. DUNSMORE