IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>   vs.<br><br>191.07 ACRES OF LAND, more or less, situated in the Denali Borough, State of Alaska, and MILAN MARTINEK,<br><br>           Defendants. | Case No. 3:98-cv-00072-JKS<br><br>ORDER ON REMAND |

**INTRODUCTION**

This case is currently on appeal to the Ninth Circuit from a decision of this Court establishing just compensation for the taking of certain mining claims. The Ninth Circuit has remanded the case for the limited purpose of determining the proper interpretation and construction of a stipulation reached by the parties at Docket No. 124. Specifically, the Circuit has remanded for the limited purpose of "determining . . . what the February 4, 2000 stipulation means, holding an evidentiary hearing if appropriate, and making findings of fact and conclusions of law." Order at Docket No. 347. This Court requested a statement of position from the parties. The parties filed their joint status report at docket No. 351 on November 26, 2006. In the report, the parties agree that no factual disputes exist regarding the stipulation, that no evidentiary hearing need be held, and that the matter should be returned to the Ninth Circuit for decision on the existing record.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Government instituted this action in straight, or traditional, condemnation on March 10, 1998, pursuant to the Declaration of Taking Act ("DTA"), 40 U.S.C. § 3111–18 (Supp. 2004)

1

(formally codified at 40 U.S.C. § 255–258d).  At the same time, the Government deposited $91,000 as its estimate of just compensation (Docket No. 5), which was distributed to Martinek on April 28, 1998 (Docket No. 26).  Martinek brought a separate action in inverse condemnation claiming that the taking actually occurred earlier—on or before  June 1, 1987.  *See Martinek v. United States*, Case No. A98-0098 CV (JKS).  The cases were consolidated for trial.  Docket No. 24.  This case was one of a number of cases seeking compensation for mining claims in a former mining district that had been incorporated into Denali National Park.  Most of these cases were assigned to this judge.  While this Court had earlier concluded in related litigation that the same right to jury trial allowed under Fed. R. Civ. P. 71A exists in inverse condemnation claims, the Ninth Circuit disagreed.  *See KLK, Inc. v. United States Dep't of the Interior,* 35 F.3d 454 (9th Cir. 1994).  Thus, since Martinek wished both a jury trial and a date of taking earlier than the commencement of this proceeding, and the government vigorously denied that a regulatory taking had occurred and argued that if a regulatory taking had occurred that there would be no right to jury trial, the Court was required to try the inverse condemnation case first (at least to the point of determining whether a regulatory taking had occurred) before proceeding to a determination of just compensation. The date of taking determines the date for determining just compensation.  This date may be important for two reasons: first, in a dynamic real estate market values may differ from day to day; and second, the government must pay interest on any compensation award from the date of taking to the date of payment.  Given the circumstances, it was unlikely that the value of the mining claims had changed between the dates debated by the parties since no one contended that there had been a dynamic market in Kantishna properties during that period.  But, the date of taking would determine the date from which the government would be paying interest and, more important, the manner in which the taking occurred would, in the court's view informed by *KLK*,  determine whether there was a right to jury trial.

   The Court, therefore, bifurcated the questions of  inverse condemnation and just compensation, and scheduled a trial limited to a determination of whether a regulatory taking had occurred prior to the filing of the declaration of taking, which would fix the date of taking at an earlier time.  Trial on these issues was set for February 8, 2000, and was expected to take ten trial

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 1998\A98-0072.022.wpd

days.  *See* Orders at Docket Nos. 104; 105; and, 118.  On February 4, 2000, the parties filed the stipulation setting dates of taking earlier than the date the declaration of taking was filed.  Docket No. 124.  The Court understood the stipulation as a concession by the government that an inverse condemnation had occurred prior to the date set in the declaration of taking, and a compromise by the parties regarding the precise dates on which such an inverse condemnation occurred in order to compromise the date from which any judgment would bear interest.  The Court thereafter operated on the assumption that the effect of the stipulation on a right to jury trial was a question of law, not a question of fact.  No party ever, to this Court's knowledge, argued that the parties had expressly addressed the jury trial issue in the stipulation.  Thereafter, the Court consistently treated this as an inverse condemnation case, not a declaration of taking case.  The Court did not understand that the parties disagreed factually on this point.  It was the Court's understanding that Martinek argued that because the government had filed a declaration of taking and its action was consolidated with Martinek's inverse condemnation action, the right to jury trial somehow carried over as a matter of law, not fact.  This Court considered and rejected that argument as inconsistent as a matter of law, not fact, with *KLK*.[1]  In the Court's view there were three, and only three, ways a condemnation action could begin and determine a date of taking; first, the government could file a declaration of taking; second, the government could file a complaint seeking a judicial condemnation; and third, the government could engage in actions which would trigger an inverse condemnation.  Where the government had either filed a declaration of taking, or commenced a judicial action in condemnation, but the landowner sought to determine a date of taking earlier than the government's

---

[1] This Court is, of course, bound by decisions of the Ninth Circuit whether it agrees with them or not.  I do not agree with the decision in *KLK,* but am bound to follow it.  I, too, have heard the quip of a famous Alaska jurist, "there is no statute so wrong that it cannot be made right by interpretation, there is no controlling decision so wrong that it cannot be distinguished away."  To me, this approach is contrary to elementary jurisprudence.  Statutes and case decisions, no matter how wrong, must be followed according to their terms.  Otherwise we are in a state of anarchy.

That said, it does not appear that either party ever thought that the parties could legally stipulate to a binding jury determination of just compensation unless that right to a binding jury verdict  existed independent of the stipulation.  Whether the parties thought that they could stipulate to an advisory jury never arose, probably because no party appears to have wished an advisory jury.

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 3\1998\A98-0072.022.wpd

action, the only way the landowner could obtain the earlier date was to prove an earlier inverse condemnation and, if he did, *KLK* governed his right to jury trial as a matter of law. See the discussion of this point in the Final Decision at Docket No. 298, pp. 20–27.

The case then proceeded to a determination of fair compensation based upon the Court's assumption that it was conducting an inverse condemnation proceeding. On February 9, 2004, the Court computed a fair market value of $339,850, of which it allocated 80 percent to the Alder and Little Audrey claims, which it determined taken on January 31, 1992, and 20 percent to the Yellow Pup claims, which it determined were taken on September 8, 1995. Docket No. 299.

## DISCUSSION

The parties were placed on notice that the Court had set aside February 8, 2000, for a ten day trial to determine whether an inverse condemnation of the subject property had occurred prior to March 10, 1998, in order to fix a date of taking earlier than that date. The stipulation at issue was reached on the verge of that trial. Docket No. 124. The Court assumed that the parties had chosen the earlier dates as a compromise in order to fix the date of valuation and the time from which interest would run. The Court also assumed, based upon the extensive briefing and argument over jury trial, that the parties had not separately addressed the jury trial issue in their stipulation, which was silent regarding jury trial. The Court understood that the parties agreed to disagree on the legal right to jury trial and put their respective positions to the Court for a legal determination. The government would rely on *KLK* to argue that no jury trial was available, and Martinek would rely on his legal theory that where an inverse condemnation matter is consolidated with an action by the government seeking condemnation, the jury trial right attaches to the inverse condemnation as a matter of law, not fact. The Court has resolved this legal issue. *See e.g.,* Orders at Docket Nos. 298; 299; and, 310.

When it received the Order on remand it appeared to this Court that the Ninth Circuit panel might see the issue differently, but precisely what it was that the panel wished determined was unclear. Was the panel asking whether the government agreed with Martinek to file an amended declaration of taking dated nunc pro tunc on the dates chosen by the parties in their stipulation? If so, no such amended declaration of taking was ever filed. This Court was not aware of any such

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 4998\A98-0072.022.wpd

contention. Was the Circuit asking whether the parties, in discussing the proposed stipulation, reached an agreement as to Martinek's right to jury trial and, if so, what was the agreement? If this was the panel's concern, this Court assumed that if any party believed that such an agreement existed it would have brought the matter up long before this.

      The parties' joint status report confirmed the Court's earlier understanding. The parties' stipulation simply addressed the dates to be used for purposes of valuation. The parties knew that this Court believed that the date of taking would determine whether this case was to be viewed as one in straight condemnation or in inverse condemnation and further understood that this Court believed and would act on the belief that such a determination would determine the right to jury trial under *KLK* but the parties viewed these as legal issues not factual issues and wished to preserve their respective legal positions. Neither party viewed the stipulation regarding dates of taking as a modification or waiver of a previously presented legal position. Both parties did believe that their stipulation regarding a date of taking would obviate the need for a bifurcated trial to determine whether an inverse condemnation had occurred prior to the filing of the declaration of taking, but this was because neither party thought that a ten day trial to determine whether an earlier inverse condemnation had occurred and to fix that date would change their legal positions regarding a right to jury trial no matter what fact findings were made. If the Court found that no inverse condemnation had occurred and that the declaration of taking fixed the date for valuation, both parties realized that a jury trial right would be present by virtue of the federal rules. If the Court found that an inverse condemnation had occurred at an earlier time the government would still argue that any date other than the date fixed by the declaration of taking would determine that the case was in inverse condemnation precluding a jury trial, and Martinek would still argue that where an action for inverse condemnation was joined with an action on a declaration of taking, a right to jury trial attached regardless of the date fixed for the valuation of the property.

      The Court therefore agrees with the parties that this case should be returned to the Ninth Circuit for decision on the existing record.

///
///

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 5\1998\A98-0072.022.wpd

**IT IS THEREFORE ORDERED:**

The parties having filed their status report and established that there are no facts in dispute between them regarding the stipulation at Docket No. 124 that would justify an evidentiary hearing, no hearing will be held. The parties agree that their dispute is purely one of law, that each parties' position is fully stated in the existing record, and that the Court has previously ruled on all relevant legal issues and the case may be resolved on the present record. The case will therefore be returned to the Ninth Circuit Court of Appeals.

Dated at Anchorage, Alaska, this 1st day of December 2006.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge