

### FOR PUBLICATION

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

191.07 ACRES OF LAND,
    *Defendant,*

and

MILAN MARTINEK,
    *Defendant-Appellant.*

No. 04-35131

D.C. Nos.
CV-98-00072-JKS
CV-98-00098-JKS

OPINION

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, Chief District Judge, Presiding

Argued and Submitted
February 9, 2006—Seattle, Washington

Filed April 4, 2007

Before: Jerome Farris, Edward Leavy, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Farris;
Dissent by Judge Leavy

## SUMMARY

### Real Estate/Inverse Condemnation

The court of appeals affirmed a judgment of the district court. The court held that where a plaintiff and the government stipulated to a taking date earlier than the declaration of taking, the taking was accomplished through inverse condemnation and therefore the plaintiff was not entitled to a trial by jury.

After appellee the United States brought a condemnation action in district court in Alaska against appellant Milan Martinek with the filing of a declaration of taking of Martinek's mining claims and a deposit of funds pursuant to the Declaration of Taking Act, 40 U.S.C. § 3113, Martinek filed a separate inverse condemnation action against the government, alleging that the mining claims were subjected to a regulatory taking in June 1987, and requesting a jury trial on the issue of just compensation under Federal Rule of Civil Procedure 71A. The district court consolidated the actions, after which Martinek and the government stipulated that the dates of taking were prior to the government's declaration of taking. The district court subsequently denied Martinek's demand for a jury trial, ruling that since the parties had stipulated to a taking date earlier than the declaration of taking, the taking was accomplished through inverse condemnation, making Martinek ineligible for a jury trial. On the issue of just compensation, the court rejected the parties' proffered discounted cash flow method of valuation and concluded that the estimated royalty income approach was the appropriate measure of fair market value. The court concluded that the rate of interest owed to Martinek on the deficiency in the government's deposit and the judgment was the rate established in the Declaration of Taking Act and entered an amended final judgment awarding Martinek over $558,000.

Martinek appealed. The government argued that Martinek waived his right to appeal the question of his right to a jury trial by failing to timely seek an interlocutory appeal of the issue and by stipulating to submit the case on written evidence without specifically reserving the issue.

[1] The Ninth Circuit has held that knowing participation in a bench trial without objection is sufficient to constitute a jury waiver. However, a continuing objection is sufficient to preserve the right to a jury trial, notwithstanding a party's assent to a pretrial order for a bench trial. [2] Martinek's stipulation did not waive his appeal rights, particularly given the saving clause in the stipulation and the fact that the district court did not interpret the stipulation as a waiver of Martinek's request for a jury trial. The court of appeals therefore had appellate jurisdiction.

[3] Under § 3114, title and right to possession vest immediately in the United States upon the government's filing of a declaration of taking and depositing an amount of money equal to the estimated value of the land. [4] The form of proceedings in a direct condemnation action is governed by Rule 71A. If the action involves the exercise of the power of eminent domain under the law of the United States, any party may have a trial by jury of the issue of just compensation by filing a demand therefore within the time allowed for answer. [5] Where the United States does not acquire privately owned land statutorily but instead physically enters into possession or institutes regulations that restrict the land's use, the owner has a right to bring an inverse condemnation action to recover the value of the land. Express consent by the United States to a jury trial in direct condemnation proceedings does not extend to inverse condemnation actions brought under the MPA; compensation is instead determined by a trial to the court. [6] The parties stipulated that the taking occurred before the declaration of taking was filed by the government. Prior to that date, any taking necessarily resulted from government restrictions on Martinek's ability to mine his claims

and was properly assessed as part of his inverse condemnation action. The just compensation issue was therefore part of the inverse condemnation action and Martinek had no right to a jury trial.

[7] The district court erred by applying a valuation method to which no one testified and that lacked a basis in the record. However, the compensation awarded on the district court's theory was higher than it would have been if the district court had accepted Martinek's approach. [8] The error in choosing a valuation methodology was therefore harmless.

[9] Selection of the statutory rate of interest is a factual issue and that will not be disturbed in the absence of clear error. The district court did not commit clear error. The judgment of the district court had to be affirmed.

Judge Leavy dissented, writing that Martinek had a right to a jury trial of just compensation for the property interest taken when the United States filed its Declaration of Taking; he neither lost nor expanded that right to a jury trial by seeking compensation for the government's temporary taking of the same property through regulation in his inverse condemnation action.

---

## COUNSEL

Lawrence V. Albert, Esq., Anchorage, Alaska, for the appellant.

Kelly A. Johnson and Katherine W. Hazard, U.S. Department of Justice, Washington, DC, for the appellee.

---

## OPINION

FARRIS, Circuit Judge:

Milan Martinek appeals the district court's award of $339,850 in compensation for the taking by the United States of his unpatented gold-mining claims in Denali National Park and Preserve. He argues that the district court erred when it determined that he was not entitled to a trial by jury of just compensation for his claims, when it selected a valuation method different from those proposed by the parties, and when it set the rate of prejudgment interest. We affirm.

## I. BACKGROUND

In 1986 Martinek was devised eleven unpatented gold-mining claims comprising 191.07 acres within what is now Denali Park, Alaska. In 1980 Congress expanded Denali Park's boundaries to encompass the eleven claims, which thereby came under the National Park Service's surface management jurisdiction pursuant to the Mining in the Parks Act, 16 U.S.C. § 1901 *et seq.* In 1985 the United States District Court for the District of Alaska entered an injunction against the Park Service in a separate case that halted all mining operations in Denali Park until the Park Service completed an Environmental Impact Statement (EIS). *See N. Ala. Envtl. Ctr. v. Hodel*, 803 F.2d 466 (9th Cir. 1986). The injunction was lifted in 1991 after the Park Service issued the EIS. *See N. Ala. Envtl. Ctr. v. Lujan*, 961 F.2d 886 (9th Cir. 1992).

The Park Service also formulated a plan for acquiring the mining claims in Denali Park, *see* 16 U.S.C. § 410hh-1(3)(b), and submitted to Congress the plan and an accompanying report that recommended acquiring the mining claims over a phased, four-year period but gave no indication when this period would begin.

On March 10, 1998, the United States brought this condemnation action pursuant to 40 U.S.C. § 3113 (formerly 40

U.S.C. § 257), with the filing of a declaration of taking of Martinek's mining claims and a deposit of funds pursuant to the Declaration of Taking Act, 40 U.S.C. §§ 3114-15 (formerly 40 U.S.C. §§ 258a-e). Martinek answered the complaint, asserting that the effective date of taking was June 1, 1987 and requesting a jury trial on the issue of just compensation under Federal Rule of Civil Procedure 71A. On April 2, 1998 Martinek filed a separate inverse condemnation action against the United States, alleging that the mining claims were subjected to a regulatory taking on June 1, 1987. The district court consolidated the government's direct condemnation action and Martinek's inverse condemnation action.

On January 25, 2000, the district court entered an order holding that Martinek had only one claim for just compensation but that he could argue the nature of the taking at trial. The parties were to litigate when the taking occurred, which would determine the date that interest on Martinek's just compensation would begin and whether the government acquired Martinek's interests by straight or inverse condemnation.

On February 4, 2000 Martinek and the government stipulated "that the dates of taking to be used for determining the amount of just compensation that the United States is to pay for the taking of all the mining claims at issue . . . [in the consolidated cases] . . . shall be January 31, 1992 [for the Little Audrey and Alder Claims], and the date of taking for the Yellow Pup [Claims] . . . shall be September 8, 1995." Both dates were prior to the government's declaration of taking. The district court subsequently denied Martinek's demand for a jury trial. It held that since the parties had stipulated to a taking date earlier than the declaration of taking, the taking was accomplished through inverse condemnation and therefore Martinek was not entitled to a trial by jury.

In January 2003, the parties agreed to waive a bench trial on the issue of just compensation and to submit the case on the written record. Both parties used the discounted cash flow

method to derive their fair market value estimates, but the district court rejected this method and concluded that the estimated royalty income approach was the appropriate measure of fair market value.

The court relied on the evidence provided by the parties' experts to calculate a fair market value of $339,850. After briefing by the parties on the question of the appropriate rate of interest, the court concluded that the rate of interest owed to Martinek on the deficiency in the government's deposit and the judgment was the rate established in the Declaration of Taking Act, 40 U.S.C. § 3116. The parties stipulated that the interest owed as of June 30, 2004 was $218,929.93. The district court then entered an amended final judgment awarding Martinek $558,779.93 ($339,850 in principal and $218,929.93 in prejudgment interest).

## II.  ENTITLEMENT TO A JURY TRIAL

### A.  *Appellate Jurisdiction*

The government argues that Martinek waived his right to appeal the question of his right to a jury trial by failing to timely seek an interlocutory appeal of the issue and by stipulating to submit the case on written evidence without specifically reserving the issue.

Failure to pursue an opportunity for interlocutory appeal normally does not constitute a waiver. *See Nat'l Union Elec. Corp. v. Wilson*, 434 F.2d 986, 988 (6th Cir. 1970); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2322 (1982) ("Although it is possible to get intermediate review of a denial of jury trial by the devices just mentioned [including interlocutory appeal and mandamus], the party who wishes a jury is not required to proceed in this fashion. Alternatively, the party may have review of the denial of a jury on an appeal from the final judgment." (footnotes omitted)). In the absence of any indication that Martinek

affirmatively waived his rights to a post-judgment appeal of this issue, his failure to timely pursue an interlocutory appeal did not waive his right to appeal the question of his right to a jury trial.

[1] In *White v. McGinnis*, 903 F.2d 699, 703 (9th Cir. 1990) (en banc), we held that "knowing participation in a bench trial without objection is sufficient to constitute a jury waiver." However, we have declined to expand *White* "to find a waiver of a right to a jury trial where a plaintiff actively contests the district court's decision to refuse the demand." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997). A "continuing objection" is sufficient to preserve the right to a jury trial, notwithstanding a party's assent to a pretrial order for a bench trial. *See United States v. Nordbrock*, 941 F.2d 947, 949-50 (9th Cir. 1991).

[2] Although *Mobile Home* and *Nordbrock* arise in the context of Federal Rules of Civil Procedure 38 and 39 rather than in the Rule 71A context, the waiver principles are analogous. Martinek's stipulation did not waive his appeal rights, particularly given the saving clause in the stipulation and the fact that the district court did not interpret the stipulation as a waiver of Martinek's request for a jury trial. We therefore have appellate jurisdiction.

*B.    The District Court's Selection of a Fact Finder*

We review de novo Martinek's entitlement to a jury trial. *See KLK*, 35 F.3d at 455.

[3] Of the three statutory methods available to the United States for acquiring private land for public use through direct condemnation, *Kirby Forest Inds., Inc. v. United States*, 467 U.S. 1, 4 (1984), the Park Service used the "expeditious procedure" prescribed by 40 U.S.C. § 3114 to acquire Martinek's mining claims. Under § 3114, title and right to possession vest immediately in the United States upon the government's filing

of a declaration of taking and depositing an amount of money equal to the estimated value of the land. *Id.* at 4-5. The exact value of the land acquired is determined through subsequent judicial proceedings.

[4] The form of proceedings in a direct condemnation action is governed by Rule 71A. Of particular relevance here is Rule 71A(h): "[i]f the action involves the exercise of the power of eminent domain under the law of the United States . . . any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer."

[5] Where the United States does not acquire privately owned land statutorily but instead physically enters into possession or institutes regulations that restrict the land's use, the owner has a right to bring an "inverse condemnation" action to recover the value of the land. *Kirby Forest*, 467 U.S. at 4-5. "Such a suit is 'inverse' because it is brought by the affected owner, not by the condemnor. The owner's right to bring such a suit derives from the self-executing character of the constitutional provision with respect to condemnation." *Id.* at 5 n.6 (citations and quotations omitted). Express consent by the United States to a jury trial in direct condemnation proceedings does not extend to inverse condemnation actions brought under the MPA; compensation is instead determined by a trial to the court. *KLK*, 35 F.3d at 457.

[6] Though the parties stipulated to a date of taking for each claim, they did not expressly state whether the condemnation was direct or inverse. Nevertheless, the stipulated single date of taking answers that question. The parties stipulated that the taking occurred before the declaration of taking was filed by the government on March 10, 1998.[1] Prior to that

---

[1]The dissent suggests a bifurcated approach. However, the parties expressly stipulated to a single taking. Additionally, the cases cited by the dissent to support bifurcation address situations where discrete property

date, any taking necessarily resulted from government restrictions on Martinek's ability to mine his claims and is properly assessed as part of his inverse condemnation action. The just compensation issue is therefore part of the inverse condemnation action and Martinek had no right to a jury trial.

We recognize that in some circumstances courts may fix the date of a direct taking prior to the date of the government's filing of a declaration of taking. *See United States v. Dow*, 357 U.S. 17 (1958); *United States v. Herrero*, 416 F.2d 945 (9th Cir. 1969). For example, where the government assumes physical possession of land prior to instituting condemnation proceedings, the district court may fix the date of taking as the date of physical possession. *See, e.g., Herrero*, 416 F.2d at 947. However, that is not the case here, and Martinek provides no persuasive explanation as to why the district court should have applied a direct condemnation approach to a taking that Martinek stipulated occurred prior to the filing of the declaration of taking.

## III.    VALUATION METHOD AND RATE OF INTEREST

[7] The district court erred by applying a valuation method to which no one testified and which lacks a basis in the record. However, the compensation awarded on the district court's theory was higher than it would have been if the district court had accepted Martinek's approach. The error was harmless. *Cf. United States v. Block*, 160 F.2d 604, 607 (9th Cir. 1947) (no error in admitting valuation from later date where no prejudice to appellants); *see also* FED. R. CIV. P. 61 (instructing courts to "disregard any error or defect in the proceedings which does not affect the substantial rights of the parties").

interests were at issue. *See, e.g., United States v. 45.50 Acres of Land*, 634 F.2d 405, 407 (8th Cir. 1980). Here, the property interests at issue in the direct condemnation and inverse condemnation actions are identical; only the process for obtaining relief distinguishes the actions.

**[8]** Martinek's expert determined what the value of the claims would be if the court's preliminary, core findings of fact (which with few exceptions became its final findings) were applied in the discounted cash flow calculation. Even allowing for the few changes in the factual findings between the district court's preliminary and final decisions, the discounted cash flow method applied to the court's undisputed fact findings would yield a value slightly lower than that calculated by the court using the royalty rate. The error in choosing a valuation methodology is therefore harmless.

The error does not become harmful on account of the fact that the court cited to general reference materials and treatises in its order. *Cf. Verizon Commc'ns, Inc. v. FCC*, 535 U.S. 467, 476, 484-87 (2002) (citing telecommunications treatises); *Quinn v. Robinson*, 783 F.2d 776, 792-96 (9th Cir. 1986) (citing literature and treatises on the political offense exception to extradition). Nor does it offend Federal Rule of Evidence 605 to do so. The district court did not rely on facts outside the record, in contrast to cases to which Martinek points. *Cf. United States v. Bonas*, 344 F.3d 945, 948-49 (9th Cir. 2003); *Lillie v. United States*, 953 F.2d 1188, 1190-92 (10th Cir. 1992); *United States v. Lewis*, 833 F.2d 1380, 1385-86 (9th Cir. 1987).

Martinek fails to identify the evidence he contends that the district court improperly admitted under the scope of the project rule, and he does not demonstrate any harm from the admission of such evidence.[2] As Martinek acknowledges, a highest and best use determination is subject to pre-existing restrictions on land use on the date of valuation. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 625 (2001).

---

[2]In his reply brief, Martinek identifies for the first time specific evidence that he contends was improperly admitted and relied upon by the government and the district court in reaching their valuation conclusions. We decline to consider these arguments. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (1996) ("Issues raised for the first time in the reply brief are waived.").

**[9]** Selection of the statutory rate of interest is a factual issue and we will not disturb it in the absence of clear error. See *United States v. 429.59 Acres of Land*, 612 F.2d 459, 464 (9th Cir. 1980). The district court's selection, after it considered alternative investments and rejected one as too risky, accords with Ninth Circuit precedent, *id.* at 465, and the prudent investor standard as established by the Third Restatement of Trusts. *See* RESTATEMENT (THIRD) OF TRUSTS § 227 (1992). The district court did not commit clear error.

## IV.   CONCLUSION

The stipulated dates of taking are prior to the filing of the declaration of taking. The district court correctly concluded that the issue of just compensation was part of the inverse condemnation action and Martinek had no right to a jury trial. The district court did not commit reversible error for any of the other reasons asserted by Martinek.

**AFFIRMED.**

_____

LEAVY, Circuit Judge, dissenting:

I respectfully dissent from Part II.B of the majority opinion which concludes that Martinek has no right to a jury trial of the issue of just compensation for the property interest taken by the United States through filing of the Declaration of Taking. In this case, there were two takings: one by inverse condemnation through government regulation which began on the date stipulated by the parties and ended when the government filed its Declaration of Taking; and the other by direct condemnation which occurred when the government filed its Declaration of Taking. When Martinek filed his inverse condemnation action in the district court he owned no interest in the mining claims. They had already been taken by the filing of government's Declaration of Taking. Martinek had a right

to a jury trial of just compensation for the property interest taken when the United States filed its complaint and Declaration of Taking. He did not forfeit that right by bringing an inverse condemnation action asserting that, in addition to the taking which occurred when the government filed its Declaration of Taking, the government had also previously taken his mining claims through regulation.

The following additional background facts are important to resolution of this issue. After the National Park Service (NPS) had completed and submitted to Congress its plan for acquisition of the mining claims in Denali Park, it was by no means clear when the claims would be acquired or whether, in the meantime, mining operations would be permitted in the park. In a 1990 communication with mining claim owners, NPS stated:

> Our expectation is that given adequate Congressional funding the acquisition of all mining claims will be accomplished over the next 10-15 years . . . . Pending acquisition, the National Park Service will receive and process [mining] plans of operations. Plans of operations that fully meet the requirements of the National Park Service Mining in Parks regulations (36 CFR 9A) and would have no significant adverse impacts on park resources could be approved.

Thus, in 1991, Martinek brought an inverse condemnation action against the United States in the Court of Federal Claims asserting that the NPS regulations had effected a taking of his mining claims. Martinek subsequently agreed to dismissal of his action so long as the government brought a direct condemnation action in district court. On March 10, 1998, the United States brought this condemnation action in the district court pursuant to 40 U.S.C. § 3113 (formerly codified at 40 U.S.C. § 257), with the filing of a Declaration of Taking of Martinek's mining claims and a deposit of funds

pursuant to the Declaration of Taking Act, 40 U.S.C. §§ 3114-15 (formerly 40 U.S.C. §§ 258a-e). Pursuant to the parties' agreement, the Court of Federal Claims dismissed Martinek's inverse condemnation action.

When Martinek filed his second inverse condemnation action against the United States in the district court, alleging that the mining claims had been the subject of a regulatory taking before the United States filed its Declaration of Taking, the district court only had jurisdiction over Martinek's action under a provision of the Mining in the Parks Act, 16 U.S.C. § 1910, which provides that holders of mining claims in National Parks may bring actions in the United States district court to recover just compensation for the federal government's taking of their claims. Before the enactment of § 1910, an inverse condemnation action for any amount over $10,000 could be brought only in the Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. §§ 1346, 1491.

Thus, uniquely at issue in this appeal is the interplay between a direct condemnation action initiated by the United States to acquire mining claims and an inverse condemnation action brought by the claim holder in the same court concerning an earlier and temporary regulatory taking of the same property interest. Martinek asserts that, because the United States initiated a direct condemnation action, he is entitled to a jury determination of just compensation. With respect to the property right that vested in the United States upon the filing of the Declaration of Taking, he is correct.

The United States generally has available two statutory methods of acquiring private land for public use. *Kirby Forest Inds., Inc. v. United States*, 467 U.S. 1, 4 (1984).[1] The first

---

[1] A third method is when, "Congress occasionally . . . enacts a statute appropriating the property immediately by a 'legislative taking' and setting up a special procedure for ascertaining, after the appropriation, the compensation, due to the owners." *Id.* at 5.

condemnation method is prescribed in 40 U.S.C. § 3113, and does not give the government immediate title to the property, but

> give[s] the Government an option to buy the property at the adjudicated price. If the Government wishes to exercises that option, it tenders payment to the private owner, whereupon title and right to possession vest in the United States. If the Government decides not to exercise the option, it can move for dismissal of the condemnation action.

*Id.* (citations omitted).

A second method, the one used by the NPS to acquire Martinek's mining claims, is the "more expeditious procedure" prescribed by 40 U.S.C. § 3114. Under this statute, title and right to possession vest immediately in the United States upon the government's filing of a "Declaration of Taking" and depositing an amount of money equal to the estimated value of the land. *Id.* at 4-5. The exact value of the land is determined through subsequent judicial proceedings.

The statute governing a direct condemnation action, 40 U.S.C. § 3114(b), provides:

> **Vesting of title.**— On filing the declaration of taking and depositing in the court, to the use of the persons entitled to the compensation, the amount of the estimated compensation stated in the declaration—
>
> (1) title to the estate or interest specified in the declaration vests in the Government;
>
> (2) the land is condemned and taken for the use of the Government; and
>
> (3) the right to just compensation for the land vests in the persons entitled to the compensation.

40 U.S.C. § 3114(b).

The form of proceedings in the statutory direct condemnation action is governed by Fed. R. Civ. P. 71A. Of particular relevance here is Rule 71A(h) which provides: "[i]f the action involves the exercise of the power of eminent domain under the law of the United States . . . any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer." Fed. R. Civ. P. 71A(h).

When it filed its Declaration of Taking and deposited the funds into the court registry, the United States immediately became the owner of the mining claims and Martinek had only a vested right to just compensation. 40 U.S.C. § 3114(b)(1) & (3). At that moment, Martinek had a right to a jury trial of just compensation for the property interest taken. Fed. R. Civ. P. 71A(h). In addition, after the United States filed its Declaration of Taking, the action could not be dismissed. *See* Fed. R. Civ. P. 71A(I)(3); *Kirby*, 467 U.S. at 12 n.18.

A property owner cannot file a counterclaim in a direct condemnation action. *United States v. 40.60 Acres*, 483 F.2d 927 n.1 (9th Cir. 1973). Thus Martinek's only remedy for the earlier regulatory taking of his mining claims was through an inverse condemnation action, discussed below.

Where the United States does not acquire privately owned land through one of the statutory methods, but instead appropriates private land by physically entering onto possession or regulation which restrict its use, the owner has a right to bring an "inverse condemnation" action to recover the value of the land. *Id.* As noted by the Court in *Kirby*, "[s]uch a suit is 'inverse' because it is brought by the affected owner, not by the condemnor. The owner's right to bring such a suit derives from the self-executing character of the constitutional provi-

sion with respect to condemnation." *Id.* at n.6 (citations and quotations omitted).

A regulatory taking may be temporary in nature and still trigger the Just Compensation Clause, imposing a duty on the government to make payment for the temporary taking. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482 U.S. 304, 317-18 (1987). "The Court has recognized in more than one case that the government may elect to abandon its intrusion or discontinue regulations." *Id.* at 317. Abandonment "results in an alteration in the property interest taken — from full ownership to one of temporary use and occupation. In such cases compensation would be measured by the principles normally governing the taking of a right to use property temporarily." *United States v. Dow*, 357 U.S. 17, 26 (1958).

This express consent by the United States to a jury trial in a direct condemnation action does not extend to inverse condemnation actions brought under the MPA. *KLK, Inc. v. U.S. Dept. of Interior*, 35 F.3d 455, 457 (9th Cir. 1994). Thus, Martinek has a right to a jury trial in the government's direct condemnation- action but not in his inverse condemnation action.

Martinek asserts that he did not lose his right to a jury trial by stipulating that the government took his property through regulation at a date prior to its filing of the Declaration of Taking. The district court determined that the effect of the parties' stipulation was to convert the consolidated actions into a single, inverse condemnation action where Martinek had no right to a jury trial. However, while the parties may stipulate to facts, and we should give the stipulation its intended effect, "our ultimate decision concerning the legal effect of those admitted facts is not and could not be controlled by the parties' stipulation." *Lorentsen v. Hood*, 223 F.3d 950, 955 (9th Cir. 2000).

The parties' stipulation could not backdate the taking that occurred when the United States filed its complaint and Declaration of Taking. The legal effect of the filing of the Declaration of Taking was to vest immediate title in the United States as of March 10, 1998. Under the unique direct condemnation procedure, "[t]he nature and extent of the property interest to be acquired is discretionary with those authorized officials within the executive branch and may not be increased or decreased by the courts." *United States v. 40.6 Acres of Land*, 483 F.2d 927 (9th Cir. 1973). We cannot alter the property interest acquired. The parties certainly are without power to do so by stipulation. Therefore, the legal effect of the stipulation was to establish a second, temporary, taking through inverse condemnation beginning on the stipulated dates and ending on March 10, 1998.

Where, as in this case, the landowner asserts that an additional property interest has been taken, the proper course is to recognize that "two separate takings are involved." *United States v. 45.50 Acres of Land*, 634 F.2d 405, 407 (8th Cir. 1980) (landowner claimed that additional land had also been taken by the government). In one taking, the direct condemnation by the government, Martinek has a right to a jury trial. In the other, his inverse condemnation action, he does not. Absent the jurisdictional grant in § 1910 to the district court to hear Martinek's inverse condemnation case, this is precisely what would have occurred. Martinek would have had a jury trial of just compensation in the direct condemnation action in the district court and the Court of Federal Claims would have determined just compensation for the loss of the use of the claims because of the earlier regulatory taking without a jury in the inverse condemnation case.

The Fifth Circuit's decision in *United States v. 101.88 Acres of Land*, 616 F.2d 762 (5th Cir. 1980) provides additional support for this bifurcated approach. When considering an analogous situation where the landowner sought damages in a condemnation proceeding for the Government's use of

lands contiguous to those condemned, the Fifth Circuit held that the landowner had to seek compensation "in a separate proceeding." *Id.* at 770. When ruling, the Fifth Circuit was aware that its determination affected the landowner's "right to a jury trial concerning compensation" for the contiguous lands. *Id.* at 766; *see also United States v. 21.54 Acres of Land*, 491 F.2d 301, 304 (4th Cir. 1973) ("if, ultimately, it is determined that the government has taken more than it has formally condemned and paid for, the landowner may recover under the Tucker Act for the additional take.").

Martinek has a right to a jury trial of just compensation for the property interest taken when the United States filed its Declaration of Taking. He neither lost nor expanded that right to a jury trial by seeking compensation for the government's temporary taking of the same property through regulation in his inverse condemnation action.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.

INTERNAL USE ONLY: Proceedings include all events.
04-35131 USA v. Martinek, et al

UNITED STATES OF AMERICA                 Katherine W. Hazard, Esq.
        Plaintiff - Appellee             FAX 202/353-1873
                                         202/514-2110
                                         Appellate Section
                                         [COR LD NTC gov]
                                         DOJ - U.S. DEPARTMENT OF
                                         JUSTICE
                                         Environment & Natural Resources
                                         Division
                                         P.O. Box 23795, L'Enfant Plaza
                                         Station
                                         Washington, DC 20026-3795

                                         Patricia L. Weiss, Esq.
                                         202/305-0451
                                         Room 854
                                         [COR LD NTC ret]
                                         U.S. DEPARTMENT OF JUSTICE
                                         601 Pennsylvania Ave. N.W.
                                         P.O. Box 0663
                                         Washington, DC 02004-0663

                                         David Spohr, Esq.
                                         FAX 206/526-6206
                                         206/526-4603
                                         [COR LD NTC gov]
                                         Office of the General Counsel
                                         U.S. Department of Commerce
                                         7600 Sand Point Way N.E.
                                         BIN C15700
                                         Seattle, WA 98115

                                         Dean K. Dunsmore, Esq.
                                         FAX 907/271-5827
                                         907-271-5452
                                         Suite 504
                                         [COR LD NTC gov]
                                         DOJ - U.S. DEPARTMENT OF
                                         JUSTICE
                                         Environment & Natural Resources
                                         Division
                                         801 "B" St.
                                         Anchorage, AK 99591-3657

                                         Lori Caramanian
                                         FAX 202/305/0202
                                         202/305/0436
                                         [COR LD NTC gov]
                                         DOJ - U.S. DEPARTMENT OF
                                         JUSTICE
                                         Environment & Natural Resources
                                         Division
                                         P.O. Box 663
                                         Washington, DC 20044-0663

INTERNAL USE ONLY: Proceedings include all events.
04-35131 USA v. Martinek, et al


                        v.

191.07 ACRES OF LAND          Lawrence V. Albert, Esq.
      Defendant               907/243-2172
                              [COR LD NTC ret]
                              CENTURY ENTERPRISES, INC.
                              P.O. Box 200934
                              Anchorage, AK 99520

                              Arthur E. Neuman, Esq.
                              202/364-0197
                              [COR LD NTC ret]
                              3201 New Mexico Blvd.
                              Washington, DC 20016-2756

MILAN MARTINEK                Lawrence V. Albert, Esq.
      Defendant - Appellant   (See above)
                              [COR LD NTC ret]

                              Arthur E. Neuman, Esq.
                              (See above)
                              [COR LD NTC ret]